In the

# United States Court of Appeals
## For the Seventh Circuit

No. 13-1178

LAWRENCE WOURMS, as personal representative of
 ESTATE OF DANE WOURMS,

*Plaintiff-Appellant,*

*v.*

SCOTT FIELDS and CITY OF EVANSVILLE, WISCONSIN,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:11-cv-00740-bbc — **Barbara B. Crabb**, *Judge.*

ARGUED SEPTEMBER 12, 2013 — DECIDED FEBRUARY 5, 2014

Before POSNER, EASTERBROOK, and SYKES, *Circuit Judges.*

POSNER, *Circuit Judge.* Sixteen-year-old Dane Wourms
was killed when, in a high-speed pursuit in April 2007 by an
unmarked police car that began shortly after 1 a.m., his car
veered off the road and crashed. The personal representative
of Wourms's estate (his father) brought this suit under 42
U.S.C. § 1983 against the officer driving the police car. The
additional defendant, the officer's employer, is joined only

as a potential indemnitor should the officer be found liable; we can ignore it. Another redundancy is the naming of the estate, in the complaint and all subsequent filings in the district court and this court, as a plaintiff in addition to the estate's personal representative. That's equivalent to the government's filing a suit in the name of the Justice Department and Attorney General Holder, as two separate plaintiffs. We have reformed the caption to eliminate the estate as a party, since an executor or administrator of an estate (and the personal representative of Dane Wourms's estate must be one or the other) is the authorized suitor on the estate's behalf, not the estate itself or its beneficiaries. See Fed. R. Civ. P. 17(a)(1)(A), (B).

The plaintiff argues that the crash was caused by the police car's intentionally ramming Wourms's car, resulting in an unconstitutional seizure of his person and property. The officer denied that his car had touched Wourms's car, and the district court granted summary judgment for the officer on the ground that the evidence obtained in pretrial discovery was insufficient to enable a reasonable jury to find that the cars had collided.

By basing his claim solely on the Fourth Amendment the plaintiff commits to proving that the police car hit Wourms's car, for otherwise there was no seizure of person or car. *Brower v. County of Inyo*, 489 U.S. 593, 595–97 (1989); *Steen v. Myers*, 486 F.3d 1017, 1021–22 (7th Cir. 2007). It's not enough that the decision of the police officer to pursue Wourms almost certainly played a causal role in the accident. Wourms was already driving erratically when the officer, warned by a 911 call from Wourms' mother that her son was drunk and "going crazy," turned on his emergency lights to signal him

to pull over. The signal prompted Wourms to speed up in an effort to escape. Soon he was going 75 to 80 miles per hour on a stretch of highway that had a posted speed limit of 25 m.p.h. Fleeing the police, and at such a speed, was criminally reckless behavior, Wis. Stat. §§ 346.04, 346.62; cf. *State v. Bartlett*, 439 N.W.2d 595, 597, 599 (Wis. App. 1989); *People v. Pike*, 243 Cal. Rptr. 54, 64–65 (Cal. App. 1988); *People v. Harris*, 125 Cal. Rptr. 40, 45–46 (Cal. App. 1975) (per curiam), for which Wourms was as a legal matter entirely responsible; the police officer had every legal right to signal Wourms to pull over because of his erratic driving and his mother's warning.

Nevertheless had the cars collided, Wourms would have had a good Fourth Amendment claim if it were proved that the collision had been the result of the pursuing officer's using excessive force to cause Worms's car to stop. *Graham v. Connor*, 490 U.S. 386, 388, 395–97 (1989); *Tennessee v. Garner*, 471 U.S. 1, 7–8 (1985); *Cyrus v. Town of Mukwonago*, 624 F.3d 856, 861–62 (7th Cir. 2010); *Anderson v. Branen*, 17 F.3d 552, 558–59 (2d Cir. 1994). The exertion of force excessive in the circumstances would be unreasonable. But ramming a recklessly driven car to induce the driver to stop, or even to cause the car to crash, need not be unreasonable. Compare *Scott v. Harris*, 550 U.S. 372, 383–86 (2007), with *Walker v. Davis*, 649 F.3d 502, 503 (6th Cir. 2011). Suppose a driver being chased by the police is going 100 miles per hour on an open highway and ahead is a school bus moving slowly, and the pursuing police officer reasonably decides that the only way he can save the children in the school bus is by ramming the car that he's pursuing, thereby causing it to swerve off the road before it hits the bus. The officer would not have violated the Fourth Amendment, whatever the consequences to

the car's driver. *Scott v. Harris, supra*, 550 U.S. at 386; *Pasco ex rel. Pasco v. Knoblauch*, 566 F.3d 572, 579–82 (5th Cir. 2009); *Abney v. Coe*, 493 F.3d 412, 413–18 (4th Cir. 2007).

The plaintiff's lawyer argues that the defendant officer resorted to what is called the Precision Immobilization Technique, a method of causing a car to stop by ramming it not squarely from behind but instead at an angle, causing it to spin and stop. See "PIT Maneuver," *Wikipedia*, http://en.wikipedia.org/wiki/PIT_maneuver (visited Feb. 5, 2014). It's accepted as a legitimate police tactic in proper circumstances, *Sharp v. Fisher*, 532 F.3d 1180, 1182, 1184 (11th Cir. 2008) (per curiam); *Helseth v. Burch*, 258 F.3d 867, 869, 872 (8th Cir. 2001), but we need not consider whether those circumstances were present in this case, because a reasonable jury could not conclude that the police car collided with Wourms's car. The district judge was therefore right to grant summary judgment in favor of the defendant, see *Russell v. Acme-Evans Co.*, 51 F.3d 64, 70 (7th Cir. 1995), since as we said the plaintiff pitched his entire case on the Fourth Amendment.

If the front of the police car hit Wourms's car hard enough to cause the car to swerve off the highway, there would be marks of collision on both vehicles. There were scratches on both Wourms's rear right bumper and the front left bumper of the police car—potential signs of a PIT maneuver. But the three expert witnesses—one of them the plaintiff's—submitted reports stating that the scratches on Wourms's bumper didn't match those on the police car in height and direction and so could not have been produced by a collision between the two cars. The experts pointed out as well that none of the paint on Wourms's car had been

found on the police car (or vice versa), that there was no de-bris on the road at the place where tire marks indicated that Wourms had begun to swerve, that the police car had left no tire marks on the road (indicating that it hadn't slowed sud-denly, as it would have done had it collided with Wourms's car), and that dents and scratches had been noticed on the police car's front bumper before the day of the accident. Two of the experts opined (without contradiction from the third, who was Wourms's expert) that, to close the gap between the two cars when the chase was reaching its climax shortly before Wourms crashed, the officer would have had to gun his engine to more than 134 miles per hour—and his car couldn't go that fast.

The plaintiff's lawyer opposes the expert evidence with amateurish conjecture, as when he argues that the skid marks of the tires on the rear wheels of Wourms's car can be explained only as the result of the car's having been struck. One of the experts testified, however, without contradiction by either of the other two, that Wourms had just reached a point where the highway curved to the right, and the skid marks showed that because of his high speed he had been unable to keep to the right of the center line and instead had slipped sideways. The skid marks made by the rear tires were consistent with that hypothesis (called a "critical speed yaw") and not with the hypothesis of a rear-end collision.

The lawyer emphasizes dents (two in number) in the rear fender of Wourms's car and says they were caused by the heads of the screws on the front license plate cover of a Ford car—and the police car was a Ford. This if true would be powerful evidence of a collision, though not a collision caused by a PIT maneuver, which involves hitting a corner

of the front car's rear fender. But neither dent matches the position of a screw on the police car's license plate; the dents are 2.7 inches lower than the screws. For the dent and screw evidence to indicate contact between the two cars, both would have had to have been braking heavily, which would have caused the front end of the officer's car to drop slightly and the rear end of Wourms's car to rise slightly. There is no physical evidence (such as skid marks) indicative of such braking; and remember that there was neither paint from either car on the other car nor debris in the road.

The plaintiff's lawyer points to the testimony of 16-year-old Myriah Hrdlicka, who was sitting in a car stopped at an intersection by the side of the highway and saw Wourms's car and the pursuing police car whiz by shortly before the crash (which she didn't see or hear). She told the police officers who were investigating the crash that she'd seen Wourms's car fly past "5, 7, or 10 seconds" before the police car; and there is no way the police officer could by accelerating have closed such a gap in the short time before the crash.

So her evidence was actually adverse to the plaintiff. She also told police that "if this is an investigation to see if the cop had anything to do with it, I don't think he did. [Wourms] just crashed." Ignoring this testimony (and similar statements by a passenger in Hrdlicka's car), the plaintiff's lawyer fastens on another version of Hrdlicka's story, given in a statement solicited by (and actually drafted by) Wourms's sister. In this version Hrdlicka states that the two cars when she saw them were only a basketball court or "maybe even a half a basketball court lengths [sic]" apart. It's unclear what she meant. There is no single size of basketball courts. A National Basketball Association court is 94

feet long. A high school basketball court is 84 feet long. The lawyer assumes—why we don't know—that that's what Hrdlicka was referring to. But even if the two cars were only 42 feet apart—though it's hard to believe that the officer would have taken the risk of getting so close to a wild kid (Wourms's wildness was well known to the police even before his mother had warned the police dispatcher that her son was drunk and "going crazy") who was driving 80 miles an hour—this doesn't mean the two cars collided. Hrdlicka and her passenger testified that the police car was going more slowly than Wourms's car, which means it was falling behind and, if so, then as noted it could not have accelerated enough to catch up with and hit Wourms's car in so short a time before the accident.

When the police officer discovered the wreckage of Wourms's car, with Wourms's body (not yet confirmed dead) lying beside it, he radioed the dispatcher, saying: "I got some damage here on East Main. He went off the road on the shoulder, we got a rollover, we got a rollover next to Stoughton Trailers need EMS [emergency medical services— i.e., paramedics]." The plaintiff's lawyer asks rhetorically: "Might a reasonable trier of fact not ask whether … he was talking about his own squad car … ." The answer is no. The officer's squad car had not run off the road, had not rolled over, had not been damaged. He had to be referring to the damage to Wourms's car and to Wourms.

AFFIRMED