NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JOHN SYLVESTER PENNY,<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>SAMI AZMY; JONATHAN A. CONCETTI,<br><br>    Defendants-Appellants,<br><br> and<br><br>CITY OF LOS ANGELES; et al.,<br><br>    Defendants. | No.  22-55572<br><br>D.C. No.<br>2:20-cv-07211-DMG-MAA<br><br>MEMORANDUM* |
| JOHN SYLVESTER PENNY,<br><br>    Plaintiff-Appellee,<br><br>  v.<br><br>CITY OF LOS ANGELES; et al.,<br><br>    Defendants-Appellants,<br><br> and<br><br>SAMI AZMY; et al., | No.  22-55579<br><br>D.C. No.<br>2:20-cv-07211-DMG-MAA |

---

\*    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Defendants.

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted August 21, 2023
Pasadena, California

Before: BERZON, RAWLINSON, and BRESS, Circuit Judges.

In this § 1983 excessive force case, Jonathan Concetti, a City of Los Angeles police officer, appeals the denial of his motion for summary judgment based on qualified immunity.[1]

"A district court's decision denying summary judgment on the ground of qualified immunity is reviewed *de novo*." *Hopkins v. Bonvicino*, 573 F.3d 752, 762 (9th Cir. 2009). To conclude that qualified immunity is improper, we must first "ask whether the facts, viewed in the light most favorable to the plaintiff, demonstrate that the [officer] violated a constitutional right." *Peck v. Montoya*, 51 F.4th 877, 887 (9th Cir. 2022). Second, we ask "whether that right was clearly established at the time of the alleged constitutional violation." *Id.* (internal quotation marks and citation omitted). Where relevant, "[w]e do not credit a

---

[1] John Penny represents that he will no longer pursue his secondary liability claim against Sergeant Sami Azmy due to the stipulated dismissal of the relevant officer. We therefore remand with instructions to dismiss that claim with prejudice.

party's version of events that the record, such as an unchallenged video recording of the incident quite clearly contradicts." *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (internal quotation marks omitted) (citing *Scott v. Cnty. of San Bernadino*, 903 F.3d 943, 952 (9th Cir. 2018)).

1. To evaluate a Fourth Amendment excessive force claim, we ask "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them." *Graham v. Connor*, 490 U.S. 386, 397 (1989). *Graham* identified three factors that indicate an action was objectively reasonable: (1) the severity of the suspect's alleged crime, (2) the presence or lack of an immediate threat to officer or bystander safety, and (3) the suspect's resistance to or evasion of arrest. *Id.* at 396. "Other relevant factors include the availability of less intrusive force, whether proper warnings were given, and whether it should have been apparent to the officers that the subject of the force used was mentally disturbed." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1033–34 (9th Cir. 2018). Additionally, "the ratio of officers to suspects present" can be considered. *Washington v. Lambert*, 98 F.3d 1181, 1190 (9th Cir. 1996).

None of the *Graham* factors indicate that Concetti's use of force was reasonable. First, Penny did not commit any serious crime. The only potential crime committed was resisting arrest, a "minor" offense. *Mattos v. Agarano*, 661 F.3d 433, 445–46 (9th Cir. 2011). Second, Penny did not pose an immediate threat

3

to Officer Concetti or any of the twelve other officers present. Although Penny held onto a wooden board at the time of the shooting, he held it perpendicular to his body, like a shield, and "did not brandish [it] at anyone." *Glenn v. Washington Cnty.*, 673 F.3d 864, 873 (9th Cir. 2011). Officer Concetti had plenty of officer cover as well as space to move away from Penny. Third, when Officer Concetti shot him, Penny was not attempting to flee. *See Tennessee v. Garner*, 471 U.S. 1, 11–12 (1985). And although he disobeyed Officer Concetti's repeated command to "get back," thereby arguably resisting arrest, Penny's noncompliance did not present an immediate threat. Penny's noncompliance thus did not rise to a level of behavior justifying the use of deadly force against him. *Cf. O'Doan v. Sanford*, 991 F.3d 1027, 1033, 1037 (9th Cir. 2021) (holding that the third *Graham* factor weighs in favor of qualified immunity when a suspect is "combative" while repeatedly resisting officer commands).

Finally, each of the "other relevant factors" weigh against Officer Concetti's use of deadly force. *Vos*, 892 F.3d at 1033. Officer Concetti relayed no warnings; the officers had less intrusive means of force available such as a taser, a beanbag shotgun, or a projectile launcher;[2] and Penny was visibly emotionally disturbed during the confrontation in a way that did not present an immediate threat. *See*

---

[2] Officer Concetti in particular had non-lethal alternatives to the use of deadly force—pepper spray and two types of batons.

*Vos*, 892 F.3d at 1033–34. There were thirteen officers on the scene when Concetti shot Penny. Further, Officer Concetti in his mind determined that he would shoot if Penny came a certain distance from him but did not warn Penny not to come that close or he would be shot. Instead, Officer Concetti continued to walk towards Penny, an emotionally disturbed individual, rather than backing off into the large surrounding open space. Officer Concetti's decision to shoot Penny was objectively unreasonable and therefore excessive force, in violation of Penny's Fourth Amendment rights.

2. As to whether the law regarding the Fourth Amendment excessive force claim was clearly established, "at the time of [Officer Concetti's] conduct, the law was sufficiently clear that every reasonable official would understand that what he [did was] unlawful." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (citations and quotation marks omitted). The decision in *Vos* confirms that as of 2018, a reasonable police officer would have understood that the use of deadly force against a possibly mentally ill suspect when there were numerous officers present, multiple less intrusive options readily available, and no immediate threat of serious physical injury—even where the suspect held an object that officers could have perceived to be dangerous if used as a weapon—was excessive force and so a Fourth Amendment violation. 892 F.3d at 1034–35.

In *Vos*, "[t]he officers knew that Vos had been simulating having a gun and that

he was agitated, appeared angry, and was potentially mentally unstable or under the influence of drugs." *Id.* at 1029. Officers at the scene believed that Vos was holding a pair of scissors when he ran towards them. *Id.* Vos asked the police to shoot him on multiple occasions and acted erratically during the encounter. *Id.* at 1028–29. Eight police officers were on the scene, armed with AR-15 rifles, handguns, and at least one "40-millimeter less-lethal projectile launcher." *Id.* at 1029. When Vos left the 7-Eleven, one police officer shot him using less-lethal force, and two fatally shot him using lethal force. *Id.* at 1029–30. After the incident, medical records confirmed that Vos had a diagnosis of schizophrenia. *Id.* at 1030. We held in *Vos* that, although at that time the law was not clearly established, "a reasonable jury could find that the force employed was greater than is reasonable under the circumstances." *Id.* at 1034, 1035–36 (internal quotation marks and citations omitted).

Here, Penny exhibited consistently erratic behavior signaling mental illness, including repeatedly speaking to the officers in incoherent non-sequiturs and referencing his own death several times. Penny held various objects during the encounter, including (at the time of the shooting) a wooden board, but did not use or threaten to use any objects in a way that presented a risk of immediate harm to the officers. Officer Concetti shot Penny with his pistol without issuing a warning of deadly force. Several officers, including Officer Concetti himself, had access to

6

and adequate time to deploy less-intrusive means of force including a beanbag shotgun, a 40-millimiter projectile launcher, or a taser; two did so, at the same time Officer Concetti used lethal force.  On these facts, *Vos* makes it "sufficiently clear" that Officer Concetti's actions were unlawful.  *Wesby*, 583 U.S. at 63.  If anything, this presents a considerably more obvious violation of the Fourth Amendment than in *Vos*.  We therefore affirm the district court's denial of summary judgment.

3. Several LAPD officers involved in the events leading to this case stipulated to their dismissal from the appeal.  Those officers ask this Court to vacate the district court order "as it applies to [those] individual officers."  Because the parties settled during the pendency of the appeal, the Appellants "forfeited the right to appeal and therefore lost their equitable entitlement to vacatur." *NASD Disp. Resol., Inc. v. Jud. Council of State of Cal.*, 488 F.3d 1065, 1069 (9th Cir. 2007). Appellants' request for vacatur is denied.

We therefore **REMAND** with instructions to dismiss Penny's secondary liability claim against Sergeant Azmy, and **AFFIRM** the district court's denial of summary judgment.