**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

PRESTON SEIDNER,
 *Plaintiff-Appellee*,

v.

JONATHAN DE VRIES, Named as
Devries #19922, Uniform Mesa
Police Officer,
 *Defendant-Appellant.*

No. 20-17403

D.C. No.
2:19-cv-05394-
DLR-DMF

OPINION

Appeal from the United States District Court
for the District of Arizona
Douglas L. Rayes, District Judge, Presiding

Argued and Submitted August 10, 2021
San Francisco, California

Filed June 30, 2022

Before:  Eugene E. Siler,* Morgan Christen, and
Danielle J. Forrest, Circuit Judges.

Opinion by Judge Forrest;
Concurrence by Judge Christen

---

 * The Honorable Eugene E. Siler, United States Circuit Judge for the
U.S. Court of Appeals for the Sixth Circuit, sitting by designation.

**SUMMARY**[**]

**Civil Rights**

The panel reversed the district court's denial of qualified immunity to a police officer in an action brought pursuant to 42 U.S.C. § 1983 alleging excessive force when the officer used a roadblock to stop plaintiff, who was suspected of committing a minor traffic violation, from fleeing on a bicycle.

The panel held that the question of whether Officer Jonathan de Vries used excessive force against Plaintiff Preston Seidner would be a question for a factfinder. The roadblock was a use of intermediate force that was capable of inflicting significant pain and causing serious injury. Given the circumstances, a jury could conclude that de Vries should have taken additional steps to stop Seidner before using an intermediate level of force given Seidner's minor offense and the lack of any safety risk to de Vries or anyone else. However, even if de Vries did use excessive force, the law as it existed at the time of the incident did not clearly establish that his actions violated the Fourth Amendment. Therefore, de Vries was entitled to qualified immunity.

Concurring in the judgment, Judge Christen agreed with the majority that no case law addressed the use of a police car to stop a bicycle and that de Vries was entitled to qualified immunity. Judge Christen dissented from the majority's Fourth Amendment excessive force analysis, stating that effectuating a traffic stop by sharply swerving a

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

police vehicle into the path of Seidner's bicycle constituted the use of deadly force and given the surrounding circumstances, was constitutionally excessive as a matter of law.

## COUNSEL

Alexander J. Lindvall (argued), City Attorney's Office, Mesa, Arizona, for Defendant-Appellant.

Mahogane D. Reed (argued) and Christopher Kemmitt, NAACP Legal Defense & Educational Fund Inc., Washington, D.C.; Sherrilyn A. Ifill, President and Director-Counsel; Janai S. Nelson, Ashok Chandran, and Kevin E. Jason; NAACP Legal Defense & Educational Fund Inc., New York, New York; Samuel Weiss and Oren Nimni, Rights Behind Bars, Washington, D.C.; for Plaintiff-Appellee.

## OPINION

FORREST, Circuit Judge:

The question in this case is whether using a roadblock to stop a person suspected of a minor offense from fleeing on a bicycle is excessive force in violation of the Fourth Amendment. As required, we analyze this question based on the specific facts of this case, and we conclude that whether Officer Jonathan de Vries used excessive force against Plaintiff Preston Seidner would be a question for a factfinder. However, even if de Vries did use excessive force, the law was not clearly established that his actions violated the Fourth Amendment. Therefore, we conclude

that de Vries is entitled to qualified immunity, and we reverse the district court's denial of de Vries's summary judgment motion.

## I.  BACKGROUND

At summary judgment, we view the facts in the light most favorable to the nonmovant, here Seidner. *Ames v. King County*, 846 F.3d 340, 347 (9th Cir. 2017). But we do not accept a "version of events that the record, such as an unchallenged video recording of the incident, 'quite clearly contradicts.'" *Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (quoting *Scott v. County of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018)).

## A.  Traffic Stop and Arrest

In February 2020, de Vries was on patrol just before midnight in Mesa, Arizona when he saw Seidner riding his bicycle on a well-lit residential street without a front light, in violation of Arizona Revised Statute § 28-817(A). De Vries pulled ahead of Seidner to confirm the bicycle-light violation and activated his marked patrol car's overhead lights. De Vries then stopped the car and opened his door to speak to Seidner. As de Vries exited his car, Seidner continued pedaling past him and began to flee. De Vries got back in his car and pursued Seidner. Seidner cut directly in front of de Vries's patrol car and continued fleeing. Seidner was traveling approximately 15 miles per hour.

After following Seidner, de Vries accelerated ahead and pulled his car at an angle across the street and stopped. Seconds later, as de Vries started to open his door, Seidner crashed into the patrol car. Seidner was on the ground when de Vries exited the car, de Vries handcuffed him while he lay moaning. De Vries asked Seidner why he fled, and

Seidner responded that he was scared. Seidner also stated that his bicycle did not have working brakes. Seidner suffered a dislocated wrist and sprained forearm and hit his head and chest in the impact.

## B. District Court Proceedings

Acting pro se, Seidner sued de Vries under 42 U.S.C. § 1983, alleging that de Vries violated his Eighth and Fourteenth Amendment rights. The district court construed Seidner's allegations as asserting a Fourth Amendment excessive-force claim and found that his claim was plausible.

De Vries then moved for summary judgment based on qualified immunity. The district court denied de Vries's motion, holding that he "seized [Seidner] within the meaning of the Fourth Amendment" because he "pulled his car into the middle of the road . . . to effectuate a roadblock to stop [Seidner] from fleeing from him." The district court also concluded that a reasonable jury could find that de Vries used excessive force by using a roadblock to stop Seidner for a minor bicycle violation. Finally, the district court held that "the law was clearly established at the time of [de Vries's] actions that his conduct could constitute excessive force." De Vries timely appealed.

## II. DISCUSSION

We typically lack jurisdiction to hear interlocutory appeals from denials of summary judgment, but we may hear appeals from denials based on qualified immunity. *Isayeva v. Sacramento Sheriff's Dep't*, 872 F.3d 938, 944–45 (9th Cir. 2017); *see* 28 U.S.C. § 1291. We review such denials de novo. *Roybal v. Toppenish Sch. Dist.*, 871 F.3d 927, 931 (9th Cir. 2017).

Qualified immunity shields a police officer from civil damages under Section 1983 "unless the officer[] violated a clearly established constitutional right." *Monzon v. City of Murrieta*, 978 F.3d 1150, 1156 (9th Cir. 2020). Thus, in deciding whether qualified immunity applies, we ask two questions: (1) did the officer violate a constitutional right, and (2) was that right "clearly established at the time of the events at issue"? *Id.* We address both questions in turn.

## A. Constitutional Violation

The Fourth Amendment protects against unreasonable seizures. *Torres v. Madrid*, __ U.S. __, 141 S. Ct. 989, 995 (2021). Before addressing de Vries's use of force, we must decide whether Seidner was seized, thereby implicating the Fourth Amendment. *See, e.g.*, *Villanueva v. California*, 986 F.3d 1158, 1165 (9th Cir. 2021). De Vries argued to the district court that he did not seize Seidner, but he abandoned this argument on appeal and for good reason. The Supreme Court has repeatedly held that "whenever an officer restrains the freedom of a person to walk away, he has seized that person." *Brower v. County of Inyo*, 489 U.S. 593, 595 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 7 (1985)). We easily conclude that de Vries's use of his patrol car to stop Seidner from fleeing was a seizure.

The controversy is whether the seizure was reasonable. "The right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). But an officer's use of force must be "objectively reasonable in light of the facts and circumstances confronting [hi]m." *Williamson v. City of Nat'l City*, 23 F.4th 1146, 1151 (9th Cir. 2022) (internal quotation marks and citation omitted); *see also Lombardo v. City of St. Louis*, __ U.S. __, 141 S. Ct. 2239, 2242 (2021)

(per curiam) (requiring a "context-specific analysis" in excessive force cases).

In assessing "whether an officer's actions were objectively reasonable, we consider: '(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion.'" *Williamson*, 23 F.4th at 1151 (quoting *Rice v. Morehouse*, 989 F.3d 1112, 1121 (9th Cir. 2021)). "We must judge the reasonableness of a particular use of force 'from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight.'" *Id.* (quoting *Rice*, 989 F.3d at 1121). Our analysis must make "'allowance for the fact that police officers are often forced to make split-second judgments— in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation.'" *Scott v. Henrich*, 39 F.3d 912, 914 (9th Cir. 1994) (quoting *Graham*, 490 U.S. at 396–97). It is also well-established that the Fourth Amendment does not require that police officers "use the least intrusive degree of force possible," *Lowry v. City of San Diego*, 858 F.3d 1248, 1259 (9th Cir. 2017) (en banc) (internal quotations and citation omitted), only that any use of force "be justified by the need for the specific level of force employed." *Rice*, 989 F.3d at 1121 (quoting *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010)).

## 1. Type and Amount of Force

Some uses of force can be quantified categorically. The best example is shooting a firearm, which by definition is "deadly force": force that "creates a substantial risk of causing death or serious bodily injury." *Smith v. City of*

*Hemet*, 394 F.3d 689, 693 (9th Cir. 2005) (en banc); *see, e.g.*, *Plumhoff v. Rickard*, 572 U.S. 765, 777 (2014) (referring to use of a firearm as "deadly force"); *Tan Lam v. City of Los Banos*, 976 F.3d 986, 997 (9th Cir. 2020) (same).

Most often, however, quantifying a particular use of force requires consideration of the "specific factual circumstances" surrounding the event. *Lowry*, 858 F.3d at 1256. Both "[t]he nature and degree of physical contact" and the "risk of harm and the actual harm experienced" are relevant. *Williamson*, 23 F.4th at 1152 (citations omitted). For example, we have classified deployment of a police dog as both a severe use of force and a moderate use of force depending on the suspect's condition when the dog was ordered to attack, how long the attack lasted, and whether the dog was within its handler's control. *See Lowry*, 858 F.3d at 1256–57. Likewise, physical contact like hitting and shoving must be quantified based on the circumstances of the situation. *See Graham*, 490 U.S. at 396 ("Not every push or shove . . . violates the Fourth Amendment.") (internal quotation marks and citation omitted); *see also Felarca v. Birgeneau*, 891 F.3d 809, 817 (9th Cir. 2018) (quantifying baton jabs used to control a crowd as "minimal" force); *Young v. County of Los Angeles*, 655 F.3d 1156, 1162 (9th Cir. 2011) (quantifying baton blows to the legs as intermediate force); *Davis v. City of Las Vegas*, 478 F.3d 1048, 1055 (9th Cir. 2007) (quantifying slamming suspect into wall headfirst breaking his neck, throwing him facedown onto the floor, and punching him in the face as "extremely severe").

Like these examples, roadblocks are a type of force that must be quantified in reference to the surrounding circumstances. For example, in *Buckner v. Kilgore*, a motorcyclist fled from law enforcement and reached speeds

"as high as 100 miles per hour during the chase." 36 F.3d 536, 538 (6th Cir. 1994). To end the pursuit, an officer pulled his police car across both lanes of the divided highway. *Id.* The motorcycle crashed into the police car and the two riders suffered "severe and permanent" injuries. *Id.* The Sixth Circuit characterized this roadblock as deadly force because the officer that created the blockade did not turn on his overhead lights and pulled out in front of the motorcycle seconds before impact. *Id.*

On the other hand, in *Seekamp v. Michaud*, the First Circuit held that a roadblock "brightly illuminated and located at the end of a long straightaway" that the suspect could have avoided hitting if the brakes on his vehicle were working properly was not deadly force. 109 F.3d 802, 807 (1st Cir. 1997). Similarly, a "rolling roadblock," where several police vehicles "surrounded" the suspect's vehicle, began braking, and stopped the suspect's vehicle with a "low-impact collision," has been characterized as "*de minimis* force." *Tucker v. McCormack*, No. 3:08-0522, 2010 WL 3619825, at *5 (M.D. Tenn. July 30, 2010).

Here, de Vries used his patrol car as a roadblock to stop Seidner from fleeing on his bicycle. It is undisputed that de Vries did not hit Seidner with his moving car. The primary dispute in quantifying this use of force is whether de Vries gave Seidner enough space to stop so he could avoid colliding with the patrol car. Because we must take the facts in the light most favorable to Seidner, we accept that de Vries did not pull far enough ahead for Seidner to stop before hitting the car.

But this fact cannot be considered in a vacuum. Seidner was on a bicycle moving at a relatively low speed, and de Vries's patrol car was visible to him throughout the entire incident. Thus, even if Seidner could not fully stop before

hitting the patrol car, it was reasonable for de Vries to expect that Seidner could react to the situation by slowing down, turning, or taking other measures to minimize any impact. *See Brower*, 489 U.S. at 598 (acknowledging that a roadblock is designed "to induce a voluntary stop"). It turned out that Seidner did not have working brakes on his bicycle, but de Vries did not know that. *See United States v. Black*, 482 F.3d 1035, 1038 (9th Cir. 2007) ("[W]hether the actions of the police are objectively reasonable is to be judged by the circumstances known to them."). De Vries could see that Seidner was riding without a helmet, but we reject the proposition that any collision with a person riding a bicycle without a helmet inherently creates a *substantial* risk of death or serious injury. The surrounding circumstances still matter.

We do not suggest that Seidner had no or only a minimal risk of harm in this situation. That would ignore the practicalities of bicycles and cars. But the risk was not inherently dire in the same way as a highway roadblock placed where a motorized vehicle traveling at a high speed cannot avoid colliding with it and death is a likely outcome of impact. *See Brower*, 489 U.S. at 599 (describing the possibility of "setting up [a] roadblock in such [a] manner as to be likely to kill" a fleeing suspect). Instead, we conclude that the roadblock that de Vries created in this case is an example of force that is "capable of inflicting significant pain and causing serious injury," which we have classified as "intermediate force." *Young*, 655 F.3d at 1161.

Seidner and our concurring colleague assert that the roadblock was deadly force. Seidner relies on two lines of cases in making this argument: (1) where officers use their vehicle as "an impact weapon," and (2) where officers erect

"a makeshift roadblock to force a collision." These cases are distinguishable.

First, as previously noted, de Vries did not hit Seidner with his moving car. De Vries stopped his car in front of Seidner, and Seidner hit the car. This distinction renders the cases where officers used their vehicle as "an impact weapon" inapposite. Second, as discussed above, the cases that have classified roadblocks as deadly force have, as noted, involved blockades that vehicles traveling at high speeds could not avoid. *See Buckner*, 36 F.3d at 538–40; *see also Hawkins v. City of Farmington*, 189 F.3d 695, 698–702 (8th Cir. 1999) (concluding that a partial roadblock created to stop a fleeing motorcyclist traveling at high speeds that caused an unavoidable collision was unreasonable force).

Here, unlike in *Buckner*, the blockade was not obscured. De Vries activated his overhead lights well before maneuvering his car to block Seidner's path; the car was also continuously within Seidner's view. Additionally, Seidner was not traveling at anything near the speeds involved in *Buckner* or the other cases that Seidner cites. We have found no case indicating that a roadblock used in circumstances comparable to those presented here constitutes deadly force. And we do not reach that conclusion in the first instance. We agree that the roadblock here was "*capable* of inflicting significant pain and causing serious injury," *Young*, 655 F.3d at 1161 (emphasis added), but we disagree that it created a "*substantial risk* of causing death or serious bodily injury," *Smith*, 394 F.3d at 693 (emphasis added), in the same way as shooting a weapon or creating a blockade that a vehicle traveling at high speeds cannot avoid.

The concurrence would create a blanket rule that using "a vehicle to block the path of a quickly moving cyclist, without allowing sufficient distance for the cyclist to avoid

a collision, constitutes deadly force." Concurrence at 27–28. The concurrence cites statistics highlighting the "vulnerability of cyclists" on the road and the numbers of serious accidents between bicycles and vehicles. *Id.* We agree that cyclists are vulnerable to suffering serious injury in collisions with vehicles. That is why we conclude that de Vries used intermediate force, or "force *capable* of inflicting significant pain and causing serious injury." *Young*, 655 F.3d at 1161 (emphasis added). But to say that the vulnerability of cyclists means that any roadblock a cyclist cannot avoid is a use of deadly force goes too far. As previously explained, we have not created blanket rules for most uses of force, including police dogs and physical assaults. And we should not do so for roadblocks used to stop bicycles. Not all roadblocks used for this purpose present the same level of risk, and the extent of the "risk of harm and the actual harm experienced" are essential inquiries in determining whether an officer's actions were reasonable under the Fourth Amendment. *Williamson*, 23 F.4th at 1152 (citations omitted).

In sum, de Vries's roadblock was a use of intermediate force. The required "context-specific analysis" would be rendered a nullity if we adopted a blanket rule that *any* collision between a bicycle and an unavoidable vehicular roadblock poses the same level of risk. *Lombardo*, 141 S. Ct. at 2242.

## 2. Governmental Interest

Next, "we evaluate the state's interests at stake by considering '(1) how severe the crime at issue was, (2) whether the suspect posed an immediate threat to the safety of the officers or others, and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight.'" *Williamson*, 23 F.4th at 1153 (citations omitted).

These factors were established in *Graham v. Connor*, 490 U.S. at 396. "Among these considerations, the 'most important' is the second factor—whether the suspect posed an immediate threat to others." *Williamson*, 23 F.4th at 1153 (quoting *Isayeva*, 872 F.3d at 947). But these factors are not exclusive; they must be considered under the totality of circumstances, including whether "less intrusive alternatives" were available to law enforcement and whether the suspect was given "proper warnings" before force was used. *Rice*, 989 F.3d at 1121–22.

There can be no dispute that the second and most important factor favors Seidner. He was riding his bicycle on a quiet residential street and there is no evidence that he was posing a risk to de Vries or anyone else, except perhaps himself because he was riding at night without a light.

Regarding the first factor—the seriousness of the offense—traffic violations are categorically minimal offenses and "generally will not support the use of a significant level of force." *Bryan*, 630 F.3d at 828. But what Seidner fails to acknowledge is that the roadblock was not used until after he tried to pedal away and evade contact with de Vries. This was a separate legal violation. Ariz. Rev. Stat. § 28-622.

The concurrence argues that we err in describing Seidner as fleeing and that at summary judgment we must analyze this case on the premise that he was not fleeing because he disputed "that he intended to flee" and the video recording is inconclusive. Concurrence at 30–32. Construing the facts in the light most favorable to Seidner does not require us to turn a blind eye to established facts that "clearly contradict[]" his telling of events. *Rice*, 989 F.3d at 1120 (citation and internal quotation marks omitted); *see also Scott v. Harris*, 550 U.S. 372, 380 (2007) (explaining that when one party's story "is

blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment"). The unchallenged videorecording shows that after de Vries turned on his overhead lights and stopped and got out of his patrol car, Seidner rode right past him. It shows that Seidner swerved his bike in front of de Vries's car and, as the concurrence acknowledges, pedaled away hard. And finally, the video recorded Seidner telling de Vries immediately after the crash that he did not stop because he "was scared." This record establishes that Seidner was evading contact with de Vries, notwithstanding Seidner's after-the-fact assertion that he did not intend to flee.

Seidner's flight is part of factor three, making it an independent consideration in assessing the strength of the government's interest in affecting an investigatory stop or arrest. *Williamson*, 23 F.4th at 1153. A minor offense, even a traffic violation, followed by an attempt to flee gives law enforcement a greater measure of interest in affecting a stop. *County of Sacramento v. Lewis*, 523 U.S. 833, 853 (1998) (flight increases the government's interest to use force to "stop a suspect and show that flight from the law is no way to freedom"); *see also Miller v. Clark County*, 340 F.3d 959, 965–66 (9th Cir. 2003) (finding that active flight at the time of arrest favors the government's use of force). Thus, factors one and three favor the government to some degree.

We also consider whether there were "less intrusive alternatives to the force employed and whether proper warnings were given." *Rice*, 989 F.3d at 1122. Seidner contends that de Vries should have verbally commanded him to stop, activated his patrol car's sirens, or created the roadblock further away to reduce the chance of a collision. To begin with, Seidner is wrong in suggesting that de Vries

failed to consider any alternatives to the roadblock. As described, at the outset of the encounter, de Vries activated his overhead lights, stopped his patrol car, and got out to talk to Seidner. Had Seidner cooperated with de Vries's efforts to speak with him and not taken off, there would have been no need for force. But he did not.

Moreover, we cannot ignore the reality that a person fleeing on a bicycle poses unique challenges for law enforcement because bicycles are faster than a person on foot and they can maneuver through obstacles and conditions that vehicles cannot. It is true that de Vries could have pulled further ahead before blocking the roadway but doing so may have resulted in Seidner changing course, not stopping. These considerations highlight the "split-second judgments" that officers must make in "rapidly evolving" situations. *Scott*, 39 F.3d at 914.

Taking all the relevant considerations together, we conclude that the government did have an interest justifying some use of force to stop Seidner from fleeing even though the incident initially arose from a minor traffic violation. To conclude otherwise would hamstring law enforcement officers in trying to hold suspects on bicycles accountable for unlawful conduct.

### 3. Balance of Interests

Finally, we must weigh the intrusion into Seidner's Fourth Amendment rights against de Vries's interest in apprehending Seidner—that is, whether there is a reasonable fit between de Vries's use of force and Seidner's conduct.

We have held that the use of intermediate force must be justified by more than "a minimal interest" held by the government. *Bryan*, 630 F.3d at 831. Absent Seidner's

attempt to flee, we would conclude that the officer's interest in this case was minimal. But as we have discussed, his flight impacts the calculus of whether de Vries acted reasonably. *County of Sacramento*, 523 U.S. at 853. And here we conclude that the ultimate question of reasonableness is not properly decided as a matter of law.

"[R]easonableness is often a question for the jury." *Jackson v. City of Bremerton*, 268 F.3d 646, 651 n.1 (9th Cir. 2001). Indeed, we have recognized that summary judgment "should be granted sparingly" in excessive force cases. *Smith*, 394 F.3d at 701 (citation omitted); *Chew v. Gates*, 27 F.3d 1432, 1443 (9th Cir. 1993) ("[W]hether a particular use of force was reasonable is rarely determinable as a matter of law."). It is the province of the jury to decide what import to give circumstances that "can be viewed in various ways." *Glenn v. Washington County*, 673 F.3d 864, 878 (9th Cir. 2011). And here, we cannot say that a jury would be compelled to conclude that the way de Vries used his car to stop Seidner from fleeing was reasonable. A jury could conclude that de Vries should have taken additional steps to stop Seidner before using an intermediate level of force given Seidner's minor offense and the lack of any safety risk to de Vries or anyone else. It could also decide that cutting in front of de Vries quickly and denying him a chance to stop on his own was unreasonable under the circumstances. The balancing of competing interests simply does not clearly favor de Vries such that he is entitled to judgment as a matter of law on this issue; this is a decision for the factfinder.

For all these reasons, we conclude that de Vries is not entitled to summary judgment on whether there was a Fourth Amendment violation.

## B. Clearly Established Right

Next, assuming Seidner can prove a Fourth Amendment violation, we address whether, "at the time of [de Vries's] conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, __ U.S. __, 138 S. Ct. 577, 589 (2018) (internal quotation marks and citation omitted). The answer to this question is no.

We do not define whether a violation is clearly established by law "at a high level of generality, since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced." *Id.* at 590 (quoting *Plumhoff*, 572 U.S. at 779). Defining the clearly established law with "specificity is especially important in the Fourth Amendment context, where it is sometimes difficult for an officer to determine how the relevant legal doctrine, here excessive force, will apply to the factual situation the officer confronts." *City of Tahlequah v. Bond*, __ U.S. __, 142 S. Ct. 9, 11–12 (2021) (cleaned up). "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular action beyond debate." *City of Escondido, Cal. v. Emmons*, __ U.S. __, 139 S. Ct. 500, 504 (2019) (cleaned up).

The district court relied on the Supreme Court's decision in *Brower v. County of Inyo*, in concluding that it was clearly established "that unreasonably erecting a roadblock in a way that is likely to cause a crash would support a claim for excessive force." In *Brower*, the question was whether a roadblock created by placing an 18-wheeler across a highway and concealing it from view of the suspect so that he could not avoid hitting it was a seizure, not whether it was an excessive use of force. 489 U.S. at 594–95; *see also Scott*

*v. Harris*, 550 U.S. 372, 384 n.10 (2007) ("The only question in *Brower* was whether a police roadblock constituted a *seizure* under the Fourth Amendment."). *Brower* did not address the excessive-force question. *Brower*, 489 U.S. at 599–600. Likewise, it "said nothing about qualified immunity. And it said nothing about whether the officers had 'fair notice' their conduct was unreasonable. Nor did the Court say anything about the *reasonableness* of the seizure." *Morrow v. Meachum*, 917 F.3d 870, 878 (5th Cir. 2019).

Seidner also points to several cases that rely on *Brower* in holding that erecting a roadblock is a clearly established Fourth Amendment violation when it is likely to cause an unavoidable crash. For example, he cites the Sixth Circuit's *Buckner* decision, discussed above, which held "that an officer violates a clearly established right under *Brower* if he pulls his squad car onto a highway with knowledge or reason to know that an approaching motorcyclist will not have time or the ability to stop or otherwise safely avoid collision with the car." 36 F.3d at 540. Even assuming this was established in *Brower*, which we do not find persuasive, this still does not clearly establish that roadblocks placed where a bicycle or other non-motorized vehicle cannot avoid them are an excessive use of force.

There are material differences between motorized and non-motorized vehicles. The most obvious difference is speed and its resulting consequence on impact. Motorized vehicles can go very fast, and high speeds were involved in the cases that Seidner cites. *See, e.g.*, *Plumhoff*, 572 U.S. at 769 (suspect swerving through traffic at speeds over 100 miles per hour). A bicycle cannot reach the same speeds, especially where a suspect is meandering in a residential area rather than racing or even riding on a roadway with vehicular traffic.

The force from a bicycle with minimal weight that is traveling at relatively low speeds is also different from the force generated by a vehicle with significant weight that is traveling at high speeds. Of course, the vulnerability of a person riding a bicycle is greater as a general matter than a person enclosed in a vehicle that contains safety features like airbags and seatbelts. But all these variables demonstrate why a decision in one case often cannot clearly establish the nature of force used in a factually different case. *Compare Montamez v. City of Orlando*, 678 F. App'x 905, 906 (11th Cir. 2017) (unpublished) (holding that an officer pulling a moving suspect off his bicycle was not excessive force), *with Toscano v. City of Fresno*, No. 1:13-CV-01987-SAB, 2015 WL 4508582, at *6 (E.D. Cal. July 24, 2015) (unpublished) (holding that an officer using his car as an impact weapon to stop a fleeing bicyclist is excessive force). In any event, Seidner has not cited, and we have not found, any case that squarely establishes "beyond debate" that de Vries's actions constitute excessive force, *City of Escondido, Cal.*, 139 S. Ct. at 504, such that de Vries should have "underst[oo]d that what he [wa]s doing [wa]s unlawful," *Wesby*, 138 S. Ct. at 589.

Seidner's final argument, assuming *Brower* does not control, is that the law is clearly established that unnecessarily using deadly or significant force violates the Fourth Amendment. He cites *Tennessee v. Garner*, 471 U.S. 1 (1985), for support. In that case, an officer fatally shot a suspect in the back of the head after he fled from police on foot and tried to climb a fence. *Id.* at 3–4. The Court ultimately held that "[w]here the suspect poses no immediate threat to the officer and no threat to others, the harm resulting from failing to apprehend him does not justify the use of deadly force to do so." *Id.* at 11. The Supreme Court has since noted that *Garner*'s "standards are cast at a high level

of generality" and cautioned against using it to clearly establish the law in factually distinguishable situations. *Rivas-Villegas v. Cortesluna*, __ U.S. __, 142 S. Ct. 4, 8 (2021); *see also Scott*, 550 U.S. at 382 ("*Garner* did not establish a magical on/off switch that triggers rigid preconditions whenever an officer's actions constitute 'deadly force.'").

However de Vries's use of force in creating a roadblock is quantified, the law as it existed at the time of the incident did not clearly establish that his actions violated the Fourth Amendment. Therefore, the district court's summary judgment ruling concluding that de Vries is not entitled to qualified immunity must be

**REVERSED.**

---

CHRISTEN, Circuit Judge, concurring in the judgment:

I

I concur in the majority's decision to reverse the district court's judgment. Given the controlling standards for qualified immunity, the court correctly holds that no clearly established law would have provided adequate notice to a reasonable officer in Officer Jonathan de Vries's position that effectuating a traffic stop by sharply swerving a police vehicle into the path of Preston Seidner's bicycle constituted the use of deadly force. I write separately because it is important to establish that de Vries did employ this degree of force, and under the circumstances here, the force violated Seidner's constitutional rights.

II

On February 25, 2019, de Vries was on patrol in a police SUV in Mesa, Arizona.[1]  Around midnight, he saw Seidner riding a bicycle on a well-lit residential street.  The bicycle did not have a light of its own, as required by section 28-817(A) of the Arizona Revised Statutes.[2]  De Vries continued past Seidner and activated the SUV's rooftop lights.  He did not use his siren or voice commands to direct Seidner to stop.  De Vries stopped in the roadway and began to get out of the SUV, but Seidner continued to pedal past the SUV and de Vries quickly jumped back into the driver's seat to chase him.

The SUV rapidly accelerated ahead of Seidner's bicycle, turned suddenly and sharply toward the curb, and stopped semi-perpendicular to the bicycle's path of travel.  Almost immediately, the bicycle collided with the SUV and Seidner slammed into the handlebars and hit the SUV headfirst.  De Vries's bodycam video recording shows Seidner moments later lying on the ground, moaning.  Seidner appears to lose consciousness and approximately a minute later, the video/audio recording shows de Vries asking Seidner, "why you taking off?"  Seidner responded that he was scared.

---

[1] Because this is an appeal of an order denying qualified immunity, we view the facts in the light most favorable to Seidner, *see Scott v. Harris*, 550 U.S. 373, 378 (2007), unless record evidence, such as videos or photographs, "clearly contradicts" Seidner's version of the facts, *see Rice v. Morehouse*, 989 F.3d 1112, 1120 (9th Cir. 2021) (quoting *Scott v. County of San Bernardino*, 903 F.3d 943, 952 (9th Cir. 2018)).

[2] Section 28-817(A) provides: "A bicycle that is used at nighttime shall have a lamp on the front that emits a white light visible from a distance of at least five hundred feet to the front . . . ."  Ariz. Rev. Stat. § 28-817(A).

Seidner suffered a dislocated wrist and injuries to his head and chest as a result of the collision with the SUV.  He was taken from the scene in an ambulance.

Seidner filed a pro se complaint pursuant to 42 U.S.C. § 1983 alleging that de Vries violated his Eighth and Fourteenth Amendment rights by effectuating a traffic stop that caused Seidner to violently crash into the SUV.  The district court construed Seidner's complaint to state a Fourth Amendment excessive force claim against de Vries.

The majority decides that de Vries used intermediate force rather than deadly force.  I disagree.  Under our precedent, swerving a vehicle to block the path of a moving cyclist without allowing sufficient distance for the cyclist to avoid a collision constitutes deadly force, because it undeniably involves the use of force that "creates a substantial risk of causing death or serious bodily injury." *See Smith v. City of Hemet*, 394 F.3d 689, 693 (9th Cir. 2005).  But however this amount of force is characterized, the majority's concessions inescapably lead to the conclusion that the force de Vries used was constitutionally excessive on the facts of this case.  The majority recognizes: (1) de Vries suspected Seidner of a very minor infraction, riding his bike without a light in a well-lit area; (2) Seidner posed no danger to de Vries or to anyone else; and (3) Seidner was pedaling hard, and he was unable to avoid a collision.  Our court should take the opportunity to establish that the maneuver de Vries employed to stop Seidner's bicycle constitutes the use of deadly force.  I would also hold that the use of that degree of force was constitutionally excessive under the circumstances presented in this case.

III

When evaluating excessive-force claims, courts determine whether officers' "actions [were] 'objectively reasonable' in light of the facts and circumstances confronting them." *Rice*, 989 F.3d at 1121 (quoting *Graham v. Connor*, 490 U.S. 386, 397 (1989)). "In assessing the objective reasonableness of a particular use of force," courts consider: "(1) the severity of the intrusion on the individual's Fourth Amendment rights by evaluating the type and amount of force inflicted, (2) the government's interest in the use of force, and (3) the balance between the gravity of the intrusion on the individual and the government's need for that intrusion." *Id.* (internal quotation marks omitted) (quoting *Lowry v. City of San Diego*, 858 F.3d 1248, 1256 (9th Cir. 2017) (en banc)). Here, these factors establish that de Vries's use of a police vehicle to effectuate a traffic stop of a bicycle by abruptly swerving into the bike's path of travel constituted excessive force.

1. *Graham* **Factor One: Type and Amount of Force Used**

The first *Graham* factor considers the type and amount of force used. To evaluate this factor, courts consider the specific factual circumstances, *id.*, including the "risk of harm and the actual harm experienced," *Nelson v. City of Davis*, 685 F.3d 867, 879 (9th Cir. 2012). Generally, the greater the risk of harm and actual harm suffered, the greater the governmental interest must be to justify the use of force. *See id.*

Here, de Vries accelerated the police SUV past Seidner, sharply and abruptly turned the SUV nearly perpendicular to the bicycle's path of travel, and stopped suddenly. The majority decides this maneuver constituted intermediate

force, not deadly force. But "all force—lethal and non-lethal—must be justified by the need for the specific level of force employed." *Bryan v. MacPherson*, 630 F.3d 805, 825 (9th Cir. 2010).

"Deadly force" refers to "force that creates a substantial risk of causing death *or* serious bodily injury." *Smith*, 394 F.3d at 693 (emphasis added); *see also Gutierrez v. City of San Antonio*, 139 F.3d 441, 446 (5th Cir. 1998) (same); *Est. of Phillips v. City of Milwaukee*, 123 F.3d 586, 593 (7th Cir. 1997) (same). Nearly forty years ago, the Supreme Court recognized that deadly force is appropriate only when "it is necessary to prevent [an] escape *and* the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others." *Tennessee v. Garner*, 471 U.S. 1, 3 (1985) (emphasis added).[3] Our court has acknowledged that an automobile can inflict deadly force. *See Acosta v. City & County of San Francisco*, 83 F.3d 1143, 1146 n.9 (9th Cir. 1996), *abrogated on other grounds by Saucier v. Katz*, 533 U.S. 194 (2001); *United States v. Aceves-Rosales*, 832 F.2d 1155, 1157 (9th Cir. 1987) ("It is indisputable that an automobile can inflict deadly force on a person and that it can be used as a deadly weapon."). Other circuits agree. *See, e.g.*, *Ludwig v. Anderson*, 54 F.3d 465, 473 (8th Cir. 1995); *Donovan v. City of Milwaukee*, 17 F.3d 944, 949–50 (7th Cir. 1994) (concluding that striking a motorcycle with a patrol car constituted "an application of deadly force" in part because there was a "greater likelihood of death or great

---

[3] The Supreme Court has since tempered *Garner*'s holding, *see Rivas-Villegas v. Cortesluna*, 142 S. Ct. 4, 8 (2021) (explaining *Garner*'s standard is "cast 'at a high level of generality'" (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004))), but this does not change the definition of what constitutes deadly force.

bodily harm resulting from a collision with a *motorcycle*, as opposed to a car").

Our court has had occasion to consider the meaning of "serious bodily injury" in the criminal context. *See, e.g.*, *United States v. Mejia-Luna*, 562 F.3d 1215, 1221 (9th Cir. 2009) (relying on the Sentencing Guidelines' definition).[4] Black's Law Dictionary defines "serious bodily injury" as "[s]erious physical impairment of the human body; esp., bodily injury that creates a substantial risk of death or that causes serious, permanent disfigurement or protracted loss or impairment of the function of any body part or organ." *Injury*, BLACK'S LAW DICTIONARY (11th ed. 2019) (citing MODEL PENAL CODE § 210.0(3)). The Ninth Circuit's model jury instructions define the phrase similarly: "bodily injury that involves (1) a substantial risk of death; (2) extreme physical pain; (3) protracted and obvious disfigurement; or (4) protracted loss or impairment of the function of a body part, organ, or mental faculty." Manual of Model Criminal Jury Instructions for the District Courts of the Ninth Circuit § 8.8 (2022 ed., updated Mar. 2022) (Assault Resulting in Serious Bodily Injury).

In the district court, de Vries argued that his maneuver did not constitute a seizure for purposes of the Fourth Amendment, and he provided a declaration in support of his summary judgment motion in which he stated: (1) he did not intend to use the SUV as a roadblock or to stop Seidner; and (2) he left about thirty feet between the SUV and Seidner's

---

[4] The Sentencing Guidelines define "serious bodily injury" as an "injury involving extreme physical pain or the protracted impairment of a function of a bodily member, organ, or mental faculty; or requiring medical intervention such as surgery, hospitalization, or physical rehabilitation." U.S.S.G. § 1B1.1 cmt. n.1(M).

bicycle before bringing the SUV to a stop and believed that the bicycle would not have collided with the SUV if it had working breaks. The majority correctly dismisses this argument.

The first problem with de Vries's argument is that the Supreme Court held in *Brower v. Inyo County*, 489 U.S. 593, 598–99 (1989), that a roadblock *does* constitute a seizure. The Court clarified in *County of Sacramento v. Lewis*, 523 U.S. 833, 844 (1998), that a seizure occurs "only when there is a governmental termination of freedom of movement *through means intentionally applied*." Here, though de Vries stated that he did not intend to create a roadblock, it is clear that he was attempting to stop Seidner's bicycle, and the video shows that he intentionally swerved the SUV into the path of the bicycle to do so. As such, this case falls outside the hypothetical the Supreme Court provided in *Lewis*, where a "'pursuing police car sought to stop the suspect only by . . . flashing lights and continuing pursuit,' but accidentally stopped the suspect by crashing into him." *Id.* As the Eighth Circuit explained, "[a]n officer's evil intentions will not make a Fourth Amendment seizure out of an objectively reasonable use of force, nor will an officer's good intentions make an objectively unreasonable use of force constitutional." *Hawkins v. City of Farmington*, 189 F.3d 695, 702 (8th Cir. 1999).

The second problem with de Vries's argument is that his subjective intent or belief is not relevant to the qualified immunity analysis. *See Jeffers v. Gomez*, 267 F.3d 895, 911 (9th Cir. 2001); *see also Brower*, 489 U.S. at 598 (explaining that it is "not . . . practicable to conduct [] an inquiry into subjective intent . . . to distinguish between a roadblock that is designed to give [an] oncoming driver the option of a voluntary stop . . . and a roadblock that is designed precisely

to produce a collision"). The objective evidence in this case is that the SUV blocked Seidner's path of travel abruptly and without warning, and that Seidner's bicycle was moving quickly. In other words, rather than using his patrol car to erect a roadblock that could be seen, anticipated, and avoided, de Vries rapidly accelerated ahead of Seidner and then sharply swerved in front of his path without warning. The maneuver he employed is akin to the one in *Buckner v. Kilgore*, 36 F.3d 536 (6th Cir. 1994), where the Sixth Circuit affirmed the denial of qualified immunity to an officer who used his squad car to erect a roadblock because some witnesses recounted that the officer pulled out in front of a motorcycle that had been traveling at a speed of up to 100 miles per hour just seconds before impact. *Id.* at 538–40. In roadblock cases, the failure to leave sufficient opportunity to avoid a collision makes all the difference. *Id*. The majority recognizes that the collision between Seidner's bike and de Vries's SUV happened almost immediately after the car swerved in front of the bike. Seidner had every incentive to avoid the SUV if it had been possible for him to do so, but yet his bicycle slammed into the SUV.

De Vries's bodycam video recording confirms that it was plainly visible Seidner was not wearing a helmet, making de Vries's maneuver that much more dangerous. But even with protective equipment, the human body and a bicycle are no match for the metal behemoths that dominate our roads. Serious bodily injuries are entirely predictable when automobiles collide with cyclists. *See, e.g.*, *Surnow v. Buddemeyer*, 380 F. Supp. 3d 1058, 1061 (D. Haw. 2019). The vulnerability of cyclists is such that death or serious bodily injuries are foreseeable whether collisions are caused

by squad cars hitting bicycles or bicycles hitting squad cars.[5] A report issued by the United States Consumer Product Safety Commission explained that 486,703 emergency-room visits in 2013 were attributed to bicycle accidents, and the mechanisms of injuries included bicycles being hit by cars, as well as bicycles hitting cars, bicycles colliding with other stationary objects, and cyclists flipping or being thrown over handle bars.[6]  Under our precedent, swerving a vehicle to block the path of a quickly moving cyclist, without allowing sufficient distance for the cyclist to avoid a collision, constitutes deadly force because it creates a substantial risk of serious bodily injury.  *See Smith*, 394 F.3d at 693.

The majority agrees that the force de Vries used was capable of inflicting significant pain and causing serious injury, but "reject[s] the proposition that any collision with a person riding a bicycle without a helmet inherently creates a *substantial* risk of death or serious injury," because "surrounding circumstances still matter."  This is incorrect. Surrounding circumstances can sometimes justify the use of

---

[5] *See* Jennifer A. Brobst, *Why Public Health Policy Should Redefine Consent to Assault and the Intentional Foul in Gladiator Sports*, 29 J.L. & HEALTH 1, 10 (2015) (revealing that "[t]he highest number of sports-related deaths are from bicycle riding (head injuries from collisions with motor vehicles)"); NAT'L HIGHWAY TRAFFIC SAFETY ADMIN., TRAFFIC SAFETY FACTS: BICYCLISTS AND OTHER CYCLISTS 1–2 (Oct. 2021), https://crashstats.nhtsa.dot.gov/Api/Public/ViewPublication/ 813197 (stating that 846 pedalcyclists were killed in the United States in 2019, and an estimated 49,000 pedalcyclists were injured the same year, due to collisions with motor vehicles).

[6] U.S. CONSUMER PROD. SAFETY COMM'N, BICYCLE INJURIES SEEN IN HOSPITAL EMERGENCY DEPARTMENTS, 2013, at 3, 8 (May 13, 2016), https://www.cpsc.gov/s3fs-public/BicycleInjuriesSeeninHospitalEmerg encyDepartments2013.pdf.

deadly force, but surrounding circumstances cannot change that this degree of force risks serious injury or death. The majority offers no response to the statistics published by the Department of Transportation and the United States Consumer Product Safety Commission showing that the highest number of sports-related deaths are attributed to bicycle riding, and explaining that some fatal accidents arise from bicycles hitting cars, some arise from cars hitting bicycles, and some arise from bicyclists flipping or being thrown over handle bars. These official statistics merely quantify a point that is virtually self-evident: Anyone who has ever flipped over the front end of a bicycle knows that doing so risks serious bodily injury.

Because the amount and type of force de Vries used was substantially likely to cause serious bodily injury, it constituted deadly force. The first *Graham* factor requires the conclusion that de Vries's maneuver can only be justified under the Fourth Amendment if the government had a significant need to use this degree of force.

## 2. *Graham* Factor Two: de Vries's Interest in the Use of Force

The second *Graham* factor looks to the government's interest in the use of force. To assess this factor, courts consider: (1) the severity of the crime; (2) whether the suspect posed an immediate threat to the safety of the officer or others; and (3) whether the suspect was actively resisting arrest or attempting to evade arrest by flight. *Mattos v. Agarano*, 661 F.3d 433, 443 (9th Cir. 2011) (en banc). This list is non-exhaustive. *Rice*, 989 F.3d at 1121. We consider the totality of the circumstances, including the availability of less intrusive alternatives to the force actually used and whether proper warnings were given. *Id*. at 1121–22. The most important consideration is "whether the suspect posed

an immediate threat to the safety of the officers or others." *Bryan*, 630 F.3d at 826 (internal quotation marks omitted) (quoting *Smith*, 394 F.3d at 702).

### A. De Vries's Use of Deadly Force Cannot be Justified by Seidner's Minor Traffic Infraction.

The majority concedes that the most important *Graham* factor, whether Seidner posed a safety threat, favors Seidner, and it is uncontested that de Vries did not suspect Seidner of committing a serious crime when he activated the SUV's overhead lights to initiate a traffic stop. De Vries admitted in his declaration that he turned on the SUV's overhead lights only because Seidner was riding his bicycle without the proper lighting equipment, a non-jailable traffic violation in Arizona. *See* Ariz. Rev. Stat. §§ 28-121(B), 28-817, 28-1598. De Vries's interest in stopping Seidner was further reduced because Seidner's infraction was a non-jailable violation carrying a maximum penalty of $250. *See* Ariz. Rev. Stat. § 28-1598. As the majority recognizes, de Vries's bodycam video recording confirms that Seidner was riding in a well-lit area.

De Vries argues that Seidner also violated section 28-622 of the Arizona Revised Statutes, a class 2 misdemeanor that criminalizes the failure to comply with an officer's lawful order, because Seidner rode past the patrol SUV after de Vries activated its overhead lights. But in deciding that Seidner "fled," the majority improperly construes the video in the light most favorable to de Vries. The video shows that Seidner was pedaling hard, but it does not show that he sped up or took evasive action after de Vries passed him and the overhead lights were activated. The district court observed, "[i]n the video, [Seidner] is riding up the street and does not appear to be attempting to flee into an area that [de Vries] could not access with his car." Though the majority

describes the video as "unchallenged," turning on the overhead lights and passing Seidner, without more, left some ambiguity in de Vries's intent. Was he taking off in response to a call from dispatch? Was he signaling another vehicle that was outside Seidner's view? This ambiguity could have been avoided if de Vries had verbally commanded Seidner to stop. Because the record is inconclusive on this point, the majority's interpretation that Seidner was fleeing is improper at the summary judgment stage. *See Rice*, 989 F.3d at 1120 (holding courts of appeals must view the facts in the light most favorable to the non-moving party unless record evidence "clearly contradicts" the non-moving party's version of the facts).

There is no question that the police have a significant interest in apprehending those who violate the law, but it is also undeniable that this interest decreases with less serious violations. *See Graham*, 490 U.S. at 396 (holding "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it"); *Hyde v. City of Willcox*, 23 F.4th 863, 872 (9th Cir. 2022) (explaining that Ninth Circuit case law makes clear "officers must reassess use of force in an evolving situation as the circumstances change"); *Bryan*, 630 F.3d at 825 (observing that "all force . . . must be justified by the need for the specific level of force employed"). Traffic laws and laws ensuring people comply with officers' lawful orders are important, but Seidner's traffic violation—riding a bicycle without a light in a well-lit area—was about as minor as they come, and we have cautioned that traffic violations rarely justify the use of significant force. *See Bryan*, 630 F.3d at 828.

In sum, because Seidner disputes that he intended to flee and we construe disputed facts in the light most favorable to

him, the most that can be said concerning this factor, even after considering the video evidence, is that Seidner was pedaling hard before the patrol car's lights were activated and he did not stop when the lights came on. Consideration of the offense(s) in this case did not justify the use of deadly force.

## B. There Was No Immediate Safety Threat to de Vries or Others.

De Vries makes no attempt to argue that Seidner posed a safety threat to him by riding a bicycle without proper lighting on what appears to have been a deserted street. At oral argument, de Vries conceded that Seidner posed at most a "minimal" threat to others, and only because de Vries gave chase after Seidner pedaled past the SUV. If Seidner had fled from the police, the foreseeable pursuit could have endangered the safety of bystanders—except there were no bystanders. Seidner was on a deserted street at midnight. The majority agrees the evidence unambiguously established that Seidner did not pose an immediate safety threat to anyone. Thus, *Graham*'s most important factor weighs against de Vries's use of force that, in my view, very apparently risked serious bodily injury or death.

## C. Resisting Arrest or Flight

The parties dispute whether Seidner fled, but there is no dispute that he pedaled past de Vries after the SUV's overhead lights were activated. Unless we view the video in the light most favorable to de Vries, we cannot assume that Seidner resisted arrest or fled, but even if the applicable standard of review permitted that inference, this factor cannot justify the use of deadly force because Seidner was suspected of only a minor infraction and he posed no safety

threat.  *See Bryan*, 630 F.3d at 825 (holding all force must be justified by its need).

### D. Much Less Intrusive Alternatives Were Readily Available and No Warnings Were Given.

The reasonableness of de Vries's vehicle maneuver is not assessed with 20/20 hindsight, *Graham*, 490 U.S. at 396, but courts do consider "the availability of less intrusive alternatives to the force employed and whether proper warnings were given," *Rice*, 989 F.3d at 1122.  De Vries did not verbally command Seidner to stop, and he gave no warning to Seidner before suddenly swerving in front of the bicycle.  De Vries argues that blocking the roadway with the SUV was "the *least* forceful way he could have stopped [Seidner]," but this is clearly not the case.  Nothing prevented de Vries from pulling beside Seidner and ordering him to stop.  *See Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1092 (9th Cir. 2013) (explaining "the absence of a warning of the imminent use of force, when giving such a warning is plausible, weighs in favor of finding a constitutional violation").  Most important, nothing prevented de Vries from stopping the SUV farther in front of Seidner to reduce the chance of a collision.  This factor weighs heavily against the use of deadly force because at least two notably less intrusive alternatives were readily available to de Vries's sudden swerve in front of Seidner's bicycle.

### 3. *Graham* Factor Three:  There is Little to Balance.

The final step in the *Graham* analysis requires balancing the gravity of the intrusion on the individual against the government's need for that intrusion.  *See Rice*, 989 F.3d at 1121.  De Vries's use of his vehicle to effectuate a traffic stop of Seidner's bicycle constituted the use of deadly force

because it created "a substantial risk of causing death or serious bodily injury." *See Smith*, 394 F.3d at 693. But that only accounts for *Graham*'s first factor: the type and amount of force used. Depending on the government's need for the intrusion, the use of deadly force is sometimes justified. Under the circumstances of this case, however, the other *Graham* factors provide a woefully insufficient counterweight to justify the use of this degree of force.

We have made clear that any force must be balanced by the need for that force. *See Meredith v. Erath,* 342 F.3d 1057, 1061 (9th Cir. 2003); *see also Bryan*, 630 F.3d at 825 (explaining that "all force . . . must be justified by the need for the specific level of force employed"). De Vries argues that his use of force was reasonable because "far more serious uses of force" have been found reasonable *to stop fleeing motorists*. But Seidner was not a fleeing motorist. (Indeed, under the appropriate standard of review, our court is not even permitted to treat him as a fleeing bicyclist.)

De Vries primarily relies on two out-of-circuit cases, neither of which aid his cause. *See Abney v. Coe*, 493 F.3d 412 (4th Cir. 2007); *Coitrone v. Murray*, 642 F. App'x 517 (6th Cir. 2016) (unpublished).[7] In *Abney*, an officer tried to stop a motorcyclist for a traffic violation, but the motorcyclist failed to stop and proceeded to run another car off the road. 493 F.3d at 414. The motorcyclist wove through oncoming traffic, on a highway and other roads, in a chase that went on for eight miles. *Id.* at 413–14. The

---

[7] The *Coitrone* case is unpublished, but the Sixth Circuit "permits citation of any unpublished [cases]," Sixth Circuit Rule 32.1(a), and may find them persuasive, *see United States v. Keith*, 559 F.3d 499, 505 (6th Cir. 2009). Unpublished Sixth Circuit cases have no precedential authority. *See id.*

parties in *Abney* disputed whether the officer intentionally used his vehicle to stop the motorcyclist, but their vehicles collided and the motorcyclist brought a § 1983 claim. *Id.* at 413–15, 417 n.1. The court deemed the officer's use of deadly force justified because, even if the officer had intentionally used his vehicle to stop the motorcyclist, the motorcyclist's flight endangered the lives of others. *Id.* at 420–21.

*Coitrone* involved similarly dangerous surrounding circumstances that justified the use of deadly force. An officer tried to pull over a motorcyclist after running his license plate and discovering outstanding warrants for kidnaping, rape, and other serious crimes. *Coitrone*, 642 F. App'x at 518. The motorcyclist failed to stop and exceeded the speed limit as he traveled in and out of the wrong lane to pass vehicles. *Id.* The parties in *Coitrone* disputed whether a second officer intentionally used his car to stop the motorcyclist, but their vehicles crashed. *See id.* at 519–20. Whether the police car struck the motorcycle or the motorcycle struck the police car, the driver was launched into a cement culvert. *See id.* at 519. The motorcyclist recovered from a coma and brought a § 1983 claim. *Id.* Not surprisingly, the court determined that the officer's potentially intentional use of deadly force was objectively reasonable because Coitrone led the police on a chase that substantially and immediately risked serious physical injury to others. *Id.* at 521.

The circumstances surrounding Seidner's arrest were nothing like those in *Abney* or *Coitrone*. Far from weaving in and out of oncoming traffic on a motorcycle, exceeding the speed limit, and causing a chase that endangered other lives, Seidner was riding a bicycle on a well-lit deserted street, posing no safety threat to anyone.

At the time de Vries stopped Seidner, it was clearly established that a seizure occurs when the government terminates freedom of movement through means intentionally applied.  *See Lewis*, 523 U.S. at 844.  This includes the use of roadblocks where suspects in motorized vehicles do not have an opportunity to avoid a collision.  *See Brower*, 489 U.S. at 596–99.  On appeal, de Vries wisely abandons the argument that he did not intend to seize Seidner, but he continues to argue that the force he used was reasonable.

I agree with the majority that we have no case law addressing the use of a police car to stop a bicycle, but we have an obligation to provide guidance where it is possible to do so, and I do not see room for debate about whether using an SUV to block the path of a bicycle, without allowing sufficient distance for the bike to avoid a collision, "creates a substantial risk of causing death or serious bodily injury."  I would so hold.

I would also rule that de Vries's use of force was constitutionally excessive as a matter of law given application of the *Graham* factors to the surrounding circumstances.[8]  Accordingly, I respectfully dissent from the majority's Fourth Amendment excessive force analysis.

---

[8] "Summary judgment at the appellate level is proper even though the prevailing party on the appeal did not move under Rule 56."  Wright & Miller, 10A Fed. Prac. & Proc. Civ. § 2716 (4th ed.).  Indeed, we have ruled that an officer's use of force was excessive even when the plaintiff did not file a cross-motion for summary judgment.  *See, e.g.*, *Deorle v. Rutherford*, 272 F.3d 1272, 1284 (9th Cir. 2001) (determining that an officer's deadly force was excessive on appeal); *see also Donovan*, 17 F.3d at 949–51 (same).